## JUANITA DALE PHILLIPS V. STATE.

No. 30,043. January 14, 1959
Motion for Rehearing Overruled February 18, 1959.
Writ of Certiorari Denied by Supreme Court of the United States
October 12, 1959; Motion for Rehearing Denied November 23, 1959.

DAVIDSON, Judge, dissented.

*Lester L. May* and *William O. Braecklein*, Dallas, for appellant.

*Henry Wade*, Criminal District Attorney, *James K. Allen, William F. Alexander, A. D. Jim Bowie*, Assistants District Attorney, Dallas, and *Leon Douglas*, State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is possession of marijuana, a narcotic drug; the punishment, fifteen years.

On the morning of October 26, 1957, J. M. Souter, Lieutenant of Detectives assigned to the Special Services Bureau of the Dallas Police Department, secured the issuance of a search warrant authorizing the search of appellant's apartment.

In the affidavit made by Lt. Souter he swore that appellant and unknown persons unlawfully possessed marijuana and that he had cause to believe and did believe that said narcotic drugs were then concealed by appellant and unknown persons in said apartment (described therein) which appellant and unknown persons occupied, possessed, controlled and had charge of.

The affidavit also contained the following: "My belief as aforesaid is based on the following facts: (A) I have been informed of the existence of the foregoing set out facts by reliable, credible and trustworthy citizen of Dallas, Dallas County, Texas. (B) and further (9)."

Appellant's counsel diligently sought to require that Lt. Souter disclose the name of his informer, but Souter declined to name him and the court refused to require him to do so.

The ruling of the trial court finds support in the holdings of this court. Hudson v. State, 156 Texas Cr. Rep. 612, 243 S.W. 2d 841, and cases there cited; Shafer v. State, 151 Texas Cr. Rep. 558, 209 S.W. 2d 599. See also People v. Gonzales, (Cal.) 297 Pac. 2d 50.

Appellant insists that the affidavit shows no probable cause, in the absence of which the search thereunder was void. Judge Richburg, the magistrate who issued the warrant, was called by appellant in his effort to show that the search warrant was invalid. He testified before the court in the jury's absence that Lt. Souter made the affidavit before him and that he was satisfied and decided that there was probable cause.

The search warrant appears to be valid. Davis v. State, 165 Texas Cr. Rep. 2, 302 S.W. 2d 419; Chapin v. State, 107 Texas Cr. Rep. 477, 296 S.W. 1095.

After keeping the apartment under surveillance for some hours, Lt. Souter went to appellant's apartment after 9 P.M. on October 27, 1957, where he found appellant and served the warrant. He was accompanied by Dallas Police Officers Frazier and Revill of the Narcotics Squad.

Shortly after the officers arrived, one George Owens came to the apartment. Lt. Souter then found a marijuana cigarette in the apartment.

Appellant then told the officers "that if we would let George Owens go she would give us the rest of the marijuana she had."

George Owens was permitted to leave, and thereupon appellant produced from her bosom a glass bottle containing marijuana. No authorities are cited in support of the contention that the officers' promise made this statement inadmissible, and we know of none. The statement was res gestae and was admissible. Sparks v. State, 161 Texas Cr. Rep. 100, 275 S.W. 2d 494; Smith v. State, 157 Texas Cr. Rep. 637, 253 S.W. 2d 665; Glaze v. State, 165 Texas Cr. Rep. 626, 310 S.W. 2d 88.

The state offered this proof through the witness Lt. Souter and the marijuana cigarette and the bottle and contents were offered as exhibits, marked and admitted without any objection being made at that time based upon the claim that such evidence was unlawfully obtained. Under the following cases, any objection as to the results and fruits of the search was waived. Killingsworth v. State, 165 Texas Cr. Rep. 286, 306 S.W. 2d 715; Wyatt v. State, 162 Texas Cr. Rep. 134, 282 S.W. 2d 392; and Outley v. State, 162 Texas Cr. Rep. 314, 284 S.W. 2d 356. See also Gonzales v. State, No. 30,106, 167 Texas Cr. Rep. 433, 320 S.W. 2d 837.

The state offered further proof as to the substance in the cigarette and the contents of the bottle being marijuana, and corroborating Lt. Souter's version of appellant's possession thereof.

Appellant sought through cross-examination of the state's witnesses and her own witnesses to establish that her telephone had been tapped and that the information which was used to secure the search warrant was illegally obtained in that manner, but the state's witnesses denied tapping or intercepting any telephone conversation.

The cautious trial judge submitted to the jury appellant's theory of the law regarding wire tapping and illegal interception of any conversation conveyed by telephone, and instructed the jury to disregard any evidence admitted before them which they believed or had reasonable doubt was obtained in violation of said law "by obtaining information that led directly or

indirectly to the discovery of any of the evidence which the state introduced in this case."

Evidence was introduced by appellant to the effect that the marijuana which appellant produced from her bosom and delivered to the officers belonged to Helen K. Smith, it having been given to her by Virginia Strom and left with appellant shortly before the officers arrived.

Appellant did not testify. Virginia Strom was called by appellant, claimed her privilege against self-incrimination and did not testify. Helen K. Smith testified that appellant agreed to her leaving the marijuana with her at her apartment after she told the appellant it was marijuana. Thus appellant's witness placed her in possession of marijuana, rendering harmless any error in the admission of testimony of the state as to her possession of that marijuana. Schaefer v. State, 121 Texas Cr. Rep. 220, 53 S.W. 2d 302; Haykel v. State, 158 Texas Cr. Rep. 359, 255 S.W. 2d 1014.

We confess our inability to find any defensive issue in this testimony. Ownership may have been in the witness Smith, but possession was in appellant. If appellant has any ground of complaint in this regard, it must be that the punishment assessed by the jury suggests that the jury did not accept it as a mitigating circumstance.

Motion for change of venue was filed and was controverted, and after three witnesses had been examined the trial court announced that he would take the motion under advisement. After nineteen veniremen had been examined and none disqualified, the motion was overruled and appellant excepted.

The voir dire examination of the veniremen is not before us and there is nothing to show that any objectionable juror served or that appellant exhausted her challenges.

No error is shown in the court's overruling the motion for change of venue. See Tyler v. State, 163 Texas Cr. Rep. 441, 293 S.W. 2d 775; McCarley v. State, 161 Texas Cr. Rep. 263, 276 S.W. 2d 300; Kizzee v. State, 166 Texas Cr. App. 191, 312 S.W. 2d 661, and cases cited; Slater v. State, 166 Texas Cr. Rep. 606, 317 S.W. 2d 203.

Appellant complains that her motion for new trial based

upon the receipt of evidence by the jury after retirement should have been granted.

The evidence heard upon said motion and allegations at most raised an issue of fact which the trial court was warranted in determining contrary to appellant's contention, and no abuse of discretion is shown.

We have examined the other propositions upon which reversal is sought and find no error which would warrant reversal.

The judgment is affirmed.

DAVIDSON, Judge, (dissenting).

If the Constitution of this state and that of the United States, which guarantee that one's home is secure against an unreasonable and unlawful search and seizure, are in force and effect and are to be enforced and followed and obeyed by the courts, this conviction can not and ought not to be permitted to stand, for it was obtained in violation of those constitutional guarantees.

If the statute law of this state which says that no evidence obtained in violation of any provision of the Constitution and laws of the United States and of this state shall be admitted in evidence against the accused in the trial of a criminal case is in full force and effect in this state and which should be followed and obeyed by the courts, this conviction can not and ought not to be permitted to stand. That statute was violated in securing this conviction. Art. 727a, Vernon's C.C.P.

This conviction rests upon evidence obtained as a result of the search of appellant's home by peace officers acting under the authority of a search warrant.

There exists in this state no statute or other authority which authorizes the issuance of a search warrant to search one's home for narcotics, or marijuana. The statute in this state which attempts to authorize the issuance of a search warrant for that purpose is void and unenforceable, because it is in direct violation of the Constitution of this state and that of the United States.

I will endeavor to demonstrate the correctness of the foregoing statements:

Art. 1, Sec. 9, of the Constitution of this state says:

"The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation."

The Fourth Amendment to the Constitution of the United States reads as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

These are not a mere mass of words of meaningless platitudes. They are solemn declarations of the people of this state and nation by which each citizen and all citizens of this state and nation are protected against unlawful arrests and searches and the use of governmental force to search their homes without their consent.

A reasonable search within the meaning of those constitutional provisions is one that is lawful and made in accordance with law. All others, then, are unlawful and are barred by the Constitutions.

Early in the history of this state, the legislature enacted Title 6 of our original code of criminal procedure, setting forth therein the procedure to be followed in securing and issuing search warrants. The legislature was there providing the procedure whereby it might be determined when a search of one's home was reasonable and therefore lawful and not inhibited or condemned by the Constitutions.

Search warrants were there authorized to be issued to search for stolen property or property illegally acquired, for implements for use in forging and counterfeiting, and for arms or munitions kept or prepared for the purpose of insurrection or riot. Art. 305, C.C.P.

In none of the statutes comprising Title 6 does one find the words "probable cause." The legislature made no effort to

define what was meant by those words, as used in the Constitutions. There was no provision made in those statutes to require that an affidavit evidencing probable cause be filed as a condition precedent to the issuance of a search warrant. The meaning of "probable cause" was left to the courts.

The courts were not long in defining that term, as used in the Constitutions.

When the Supreme Court of this state had appellate jurisdiction in criminal cases, that court defined "probable cause," in Landa v. Obert, 45 Texas, 539, as:

"A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged."

That definition has stood unchanged and unchallenged throughout the years and appears to be the definition accepted by all jurisdictions.

It was not until 1937 that the legislature of this state legislated upon the subject of the issuance of search warrants to search for narcotics. This the legislature attempted to do by the enactment of Sec. 16 of the Uniform Narcotic Drug Act, appearing as Art. 725b, Vernon's P.C.[1]

---

1.—"Sec. 16. [Search Warrants-Issuance] Whenever any officer or employee of the Department of Public Safety or any peace officer who has authority to and is charged with the duty of enforcing the provisions of this Act, shall have reason to believe that any person has in his possession any narcotic drugs contrary to the provisions hereof, he may file, or cause to be filed his sworn complaint to such effect before any magistrate of the county in which any such narcotic drugs are located, and procure a search warrant and examine the same. The application for the issuance of and execution of any such search warrant hereunder, and all proceedings relative thereto, shall conform as near as may be to the provisions of Title 6 of the Code of Criminal Procedure, except where otherwise provided in this Act. Upon the execution of such search warrant the officer executing the same shall make due return thereof to the Court issuing the same, together with a sworn inventory of all narcotic drugs taken thereunder. The Court shall thereupon issue process against the person owning or controlling the narcotic drugs and upon return thereof it shall proceed to determine whether or not the same are held or possessed in violation of the provisions of this Act, and make up a finding to the effect that the drugs are so illegally held or possessed, a judgment shall be entered against the owner or person found in the possession of the same for the costs of the proceedings and provide for the disposition of the property forfeited, as provided by the terms hereof. In no event shall the narcotic drugs seized by any authorized person under authority of a search warrant or without authority of a search warrant be taken from the custody of any officer or other person authorized to seize same, by writ of replevin or other process, but the same shall be held by the officer to await the final judgment in such criminal proceedings as may be had thereon."

Sec. 16 thereof furnishes the basis as well as the procedure for the issuance of a search warrant to search one's home for marijuana.

It is by reason of Sec. 16 that the warrant to search this appellant's home was issued. If that statute is void, it furnishes no basis for the issuance of a search warrant, and any warrant to search which is issued thereunder is void.

Sec. 16 is void, because it authorizes a search warrant to issue to search one's private residence without an oath or affirmation evidencing probable cause for the search, as required by our State and Federal Constitutions.

Under that section all that is necessary for the issuance of a search warrant to search one's home for narcotics is for some peace officer to file or cause to be filed with some magistrate his "sworn complaint" that he has "reason to believe" that some person has in his possession narcotic drugs in violation of law. Upon the filing of such complaint the magistrate issues the search warrant under the applicable procedure set out in Title 6 of the Code of Criminal Procedure.

To make doubly sure that a search warrant could issue upon an affidavit of an officer only that he has "reason to believe," the legislature made it clear that the provisions of Sec. 16 were to apply over any provision of Title 6, C.C.P., to the contrary.

By no stretch of the imagination can it be said that "information and belief" or "reason to believe" constitute "probable cause," for no facts or circumstances are stated which evidence "probable cause."

In Chapin v. State, 107 Texas Cr. Rep. 477, 296 S.W. 1095, this court held that " 'reason to believe' " and " 'do believe' " did not constitute probable cause.

In that case, an affidavit for search warrant upon information and belief was held illegal. That holding in the Chapin case has never been changed by this court but has been repeatedly followed heretofore. It is the law of this state today.

Under the Constitution of this state it is clear that a warrant to search one's home can be issued only upon affidavit which evidences probable cause for the search and that it can not issue upon an affidavit of "information and belief." See, also, Pate v.

State, 129 Texas Cr. Rep. 45, 83 S.W. 2d 984, and Trimmer v. State, 135 Texas Cr. Rep. 372, 120 S.W. 2d 265.

The federal decisions under the Constitutions and laws of the United States are to the same effect. I need only to call attention to the case of Byars v. U. S., 273 U. S. 28, 47 Sup. Ct. 248, 71 L. Ed. 520, by the Supreme Court of the United States, to justify that statement. There, it was held that a search warrant issued upon an affidavit of information and belief was bad, under the Fourth Amendment to the Federal Constitution and the laws of the United States. See, also, the case of Nathanson v. U. S., 290 U. S. 41, 54 Sup. Ct. 11, 78 L. Ed. 159, by the Supreme Court of the United States, which holds that a search warrant issued upon an affidavit of suspicion and belief, without any statement of the facts or circumstances by which the issuing officer can find probable cause therefor, violates the Constitution and laws of the United States.

It is apparent that this court and the Supreme Court of the United States are in complete accord with the legal conclusion that a search warrant to search one's private residence can not issue upon an affidavit of mere opinion or belief. It may issue only upon an affidavit evidencing probable cause for the search.

In addition to the Fourth Amendment to the Federal Constitution and the federal decisions, including the decisions of the Supreme Court of the United States, we have a federal statute which says that a search warrant under federal law can be issued only upon probable cause and that affidavits or depositions must set forth the facts tending to establish the grounds of the application or the probable cause for believing they exist. Sec. (c), Rule 41, Title 18, U.S.C.A.

So it is demonstrated that within the meaning of the Constitution of Texas and that of the United States a warrant to search a private residence can not issue upon an affidavit based solely upon information or belief—notwithstanding all of which, the legislature of this state said, in the enactment of Sec. 16, to the exact contrary: i.e., that a search warrant may issue upon the affidavit of a peace officer that he has "reason to believe," with no requirement whatsoever of a showing of "probable cause."

If Sec. 16 is valid, then Art. 1, Sec. 9, of the Constitution no longer exists. If Art. 1, Sec. 9, is a part of our Constitution, then Sec. 16 is void. The Constitution and Sec. 16 can not both be valid.

What does the Constitution of this state say about such act of the legislature? Here is what Art. 1, Sec. 29, of our Bill of Rights says:

"To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, *and all laws contrary thereto,* or to the following provisions, shall be void." [Emphasis, supplied.]

As was said in Faulk v. Buena Vista Park Burial Ass'n., 152 S.W. 2d 891, that section is so plain that construction thereof is unnecessary.

Art. 1, Sec. 9, of the Bill of Rights says that a search warrant to search a private residence can issue only upon probable cause. By the enactment of Sec. 16, the legislature said to the exact contrary — that is, that a search warrant to search a private residence may issue upon information and belief. Art. 1, Sec. 29, of the Bill of Rights says that such an enactment by the legislature is void because it is in contravention of the Constitution.

To my mind, it is inconceivable how Sec. 16 may be judicially declared to be a valid statute and a search warrant issued in accordance with the provisions of Sec. 16 declared valid. Yet that is what my brethren hold when they affirm this conviction.

The legislature can no more disobey and violate the Constitution than can any private citizen of this state. The legislature was powerless to say that a warrant to search one's private residence may issue upon an affidavit of a peace officer, upon his belief, without probable cause.

The search warrant used in this case as authority to search appellant's residence, being based upon a void statute, was itself void.

For reasons other than that it was issued upon a void statute, the search warrant in this case was void:

What did the affiant swear in the affidavit? He swore, positively and without equivocation, that on the 26th day of October, 1957, in Dallas County, Texas, the appellant "Juanita Dale Phillips and unknown persons did then and there unlawfully possess a narcotic drug, to-wit: marijuana."

 If the affiant knew, as he swore he did, that appellant unlawfully possessed marijuana, it occurs to me that he should have arrested her because he knew she was committing a felony either in his presence or within his knowledge. The affiant appears not to have done that, but, instead, sought to secure a search warrant to search the home of Juanita Dale Phillips.

Note is also taken of the fact that the affiant did not say in the affidavit that he knew *where* appellant kept or *how* she possessed the marijuana which he says she unlawfully possessed.

Following the above quoted portion thereof, the affidavit states:

"And I have cause to believe and do believe that said narcotic drugs are now concealed by Juanita Dale Phillips and unknown persons in an apartment, #24A, situated in Dallas County, Texas, at 4328 McKinney Avenue, City of Dallas, Dallas County, Texas, which said Juanita Dale Phillips and unknown persons occup*ies*, possess*es*, control*s* and *has* charge of."

It will be noted that the affiant did not say that he knew the narcotics were in the apartment or that appellant possessed the narcotics in the apartment. What the affiant there said was that he believed the appellant and unknown persons were concealing the narcotics in the apartment occupied, possessed, and controlled by her and unknown persons.

The "belief" there expressed was authorized by Sec. 16.

The affiant then proceeded to give in the affidavit the basis for his belief, as follows:

"My belief as aforesaid is based upon the following facts: I have been informed of the existence of the foregoing facts set out by reliable, credible, and trustworthy citizens of Dallas, Dallas, County, Texas."

No facts were stated or had been theretofore stated. All that had been said by the affiant was that he had "cause to believe" and did "believe" that the narcotics were concealed in the apartment.

By no hypothesis of reasoning can it be said that any facts were stated in the affidavit which would warrant a cautious man in the belief that narcotics were concealed in the apartment.

There was then, no probable cause stated in the affidavit for the search warrant. To the contrary, it was based entirely upon belief.

The affiant asked that a warrant be forthwith issued to search appellant's home for and to seize the narcotic drugs. Upon that affidavit the justice of the peace issued the search warrant commanding the sheriff or any other peace officer of Dallas County to search appellant's home for narcotics. The warrant was issued upon the following finding and conclusion of the justice of the peace:

"* * * Complaint having stated facts and information in my opinion sufficient to establish probable cause for the issuance of the warrant."

Such finding is not supported by the affidavit, because no facts were stated there by which probable cause was evidenced. The finding of the justice of the peace of the existence of probable cause is not warranted or authorized by the affidavit. The right to issue the warrant rested alone upon the matters stated in the affidavit. Extrinsic evidence can not be received to aid an affidavit. Moreover, when the justice of the peace issued the warrant upon a finding of probable cause, he went further and issued the warrant for a reason not authorized by Sec. 16.

There were no facts stated in the affidavit by which the justice of the peace, in the exercise of his discretion, could find that probable cause existed for the issuance of the search warrant. The warrant so issued was invalid.

Ordinarily—and especially under federal procedure in the federal courts — evidence obtained as a result of an invalid search warrant, being in violation of the Constitution, is not admissible.

Texas was not content to let the inadmissibility of such evidence rest alone upon the Constitution; it has a special statute upon the subject. I refer to Art. 727a, Vernon's C.C.P., which reads as follows:

"No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the United States or of this State shall be admitted in evidence against the accused on the trial of any criminal case."

Under that statute, evidence obtained as a result of a search of one's private residence must have been obtained, in order to be admissible, not only in accordance with the Constitution and laws of this state but also in accordance with the Constitution and laws of the United States.

That statute makes applicable the Federal Constitution and laws of the United States in this case.

The reasons heretofore pointed out, as showing the affidavit for the search warrant in this case did not meet the requirements of the Constitution and laws of this state, are also applicable to and show that the affidavit for the search warrant did not meet the requirements of the federal laws wherein probable cause is made necessary to the issuance of a search warrant.

Texas has no statute requiring that an affidavit for search warrant show probable cause.

So then the sufficiency of the affidavit for the search warrant and the facts set forth therein upon which the search warrant was sought must be tested under the federal laws and decisions thereunder to determine what facts are necessary to be stated to show probable cause.

The affidavit in this case did not meet the federal requirements.

There is a further reason why the search warrant used in this case is invalid:

The affidavit for the search warrant was made by one person for the search of a private residence.

An affidavit for a search warrant to search a private residence must be made by *two* credible persons.

Title 6, C.C.P., relating to search warrants, authorizes the issuance thereof upon the affidavit of one affiant; it does not specify that more than one affiant is required.

When the legislature came on to implement state-wide prohibition under the so-called Dean Law, provision was made by Art. 691, P.C., for the issuance of search warrants to search for contraband liquors. It was specified therein that the search

warrant so authorized was to be issued under "Title 6 of the Code of Criminal Procedure." It was also specified in that same article that:

"No warrant shall be issued to search a private dwelling occupied as such * * * unless the affidavits of two credible persons show that such residence is a place where intoxicating liquor is sold or manufactured in violation of the terms of this act."

The legislature did not stop there but went further in that statute and expressly provided that the provisions of Title 6, C.C.P., should apply to the issuance of search warrants "except where otherwise provided in this title."

Such remained the law of this state touching search for and seizure of intoxicating liquors until 1935, when the legislature, in obedience to the repeal of state-wide prohibition, came on to pass the Liquor Control Act (Chap. 8, Vernon's Penal Code). By Art. 666-20 of that act (Vernon's P.C.), express provision was made for the issuance of warrants to search for contraband liquor. It was there provided that a warrant to search for such liquor in a private residence must be based upon an affidavit "made by two (2) credible persons." There, again, it was expressly stated that said provision was an exception to the provisions of Title 6 of the Code of Criminal Procedure.

I am now and have always been convinced that when the legislature required that two persons make the affidavit to search a private residence for intoxicating liquor such legislation constituted a direct limitation upon Title 6 of the Code of Criminal Procedure so as to require that all warrants to search a private residence must be based upon the affidavit of two persons. The words appearing in Art. 666-20, Vernon's P.C.: "Except as herein provided the application, issuance, and execution of any such warrant and proceedings relative thereto shall conform as near as may be to the provisions of Title 6 of the Code of Criminal Procedure," require such a construction.

In my opinion there is another and equally compelling reason why the affidavit of two persons is now required for the issuance of a search warrant to search a private residence: That reason is that it is only by such construction that there exists equal and uniform legislation touching that subject.

It is discrimination, to the point of destruction of all statutes

on the subject, to say that a warrant to search a private residence for intoxicating liquor must be based upon the affidavit of two persons, while a warrant to search the same residence for stolen property or for narcotics may issue upon the affidavit of but one person.

My views are set out in my dissenting opinion in the cases of Helton v. State, 164 Texas Cr. Rep. 488, 300 S.W. 2d 87; Williams v. State, 166 Texas Cr. Rep. 368, 314 S.W. 2d 308 and Gonzales v. State, No. 30,106, 167 Texas Cr. Rep. 433, 320 S.W. 2d 837.

The search warrant in this case, issued upon the affidavit of but one person, was therefore illegal and in violation of constitutional guarantees.

It must be remembered that it is for the legislature to fix the procedure to be followed whereby a reasonable search of one's home might be accomplished.

If my brethren be correct in saying that the legislature has provided two sets of procedure, one to search for certain properties and another to search for other properties, then the legislature has not provided a procedure at all, as the purported procedures set forth are repugnant one to the other.

On the other hand, this situation and condition could and would be avoided by adopting my construction of the acts of the legislature, which is that by legislative enactment a warrant to search a private residence must be based upon the affidavit of two credible persons evidencing probable cause for the search.

So much as to the legality of the search warrant:

How was the search warrant executed, and what happened at the time of its execution? The officers held the search warrant for a period of thirty-six hours after its issuance and kept appellant's home under surveillance about fifteen hours over a two-day period before attempting to execute it: About 6:15 or 6:30 o'clock on the evening of the second day the officers had gone to the vicinity of appellant's home to continue their surveillance. About 9:00 o'clock that night a telegraph messenger knocked at the door of her home. Appellant answered the knock, and a telegram was delivered to her. Immediately thereafter, the searching officers entered appellant's home and, after advising her that they were officers and had a search warrant, deliv-

ered the search warrant to her, and began a search of her home. They searched the apartment for about fifteen minutes without finding "anything of an unusual nature."

After the initial search, one George Owens entered the house, or apartment. When he had been there for a time, the officers found in a chair in the living room a cigarette containing marijuana. A conversation then ensued between appellant and one of the searching officers, in the course of which appellant said:

"If you won't put George Owens in jail I'll give you the rest of the marijuana."

Thereupon, appellant withdrew from her bosom a bottle containing marijuana.

The state introduced an empty "Prince Albert" tobacco can and some cigarette papers.

That appellant was under arrest from the time the officers entered the apartment is conclusively established by the fact that they immediately identified themselves as officers and as being in possession of a search warrant to search the premises.

As before stated, the search warrant which authorized appellant's arrest was delivered to her.

Thus is it shown that all the incriminative evidence against appellant was obtained by the use and authority of the search warrant. Indeed, the statements, the act, and the conduct of the appellant were directly the result of the search warrant while she was under arrest, all of which evidence was admitted over her objection.

Appellant did not testify. She sought by the testimony of another to show that the marijuana belonged to another person and that it had been left in her possession as an accommodation to that person.

This testimony explained the presence of the marijuana in appellant's home in keeping with and in a manner compatible with her innocence—that is, that she did not possess or exercise any ownership or control over the marijuana and that it belonged to another person.

The evidence did not show or admit that appellant possessed

the marijuana found in her apartment, which possession was the offense for which she was tried and convicted.

Nothwithstanding such fact, my brethren say that appellant should not be permitted to complain of the unlawful search of her home under a wholly and totally invalid warrant.

It has long been the established rule in this state that where illegal testimony is admitted, over objection, the error is not cured, because the defendant had to make the best of the situation and cross-examine on such matter or offer testimony to rebut, destroy, or explain the effect of such illegal testimony. Branch's P.C., 2d Edition, p. 134; Trollinger v. State, 153 Texas Cr. Rep. 364, 219 S.W. 2d 1018; Willoughly v. State, 87 Texas Cr. Rep. 40, 219 S.W. 468; Reynolds v. State, 82 Texas Cr. Rep. 443, 199 S.W. 636.

That rule of law is not only legally correct, but it is correct as a matter of right and wrong.

So the time has come in this state when peace officers can kick in the door of one's home and search and ransack it at will and without any lawful authority to do so and in total disregard of the law, and the owner of that home, upon trial for possessing the property found therein, must submit to such outrage and deprivation of her constitutional right against unlawful search before she can show that she was innocent of any unlawful connection with the property so found.

If that is equal justice under law, I want no part of it. If a conviction obtained under such circumstances is due process of law, then there is no due process of law.

When the officers entered appellant's home, they either had the right or they did not have the right to do so. That they did not have that right is established. Hence their every act and the evidence so found were in direct contravention of the Constitution guaranteeing one's home against unlawful search.

Those acts so proven were not admissible in evidence and the evidence so obtained was not admissible, being in violation of the Constitution of this state and of the United States and of Art. 727a, Vernon's C.C.P., which says that evidence unlawfully obtained shall not be admitted in evidence against an accused in the trial of any criminal case.

The unlawful search of appellant's home was perpetuated in the introduction of the evidence, all before appellant sought to introduce evidence explaining the presence of the marijuana in her home.

In affirming this conviction, my brethren necessarily sustain as a valid statute Sec. 16 of the Uniform Narcotics Drug Act, which authorizes a search warrant to issue upon belief, only, as against the contention that it is repugnant to the Constitution of the United States, which authorizes a search warrant to issue only upon probable cause.

Such holding brings this case within the appellate jurisdiction of the Supreme Court of the United States.

If Sec. 16 is a valid statute and not repugnant to the Constitution of the United States, the Supreme Court of the United States should so hold; if Sec. 16 is repugnant to the Fourth Amendment to the Constitution of the United States, as I contend, that court ought to so hold.

Such suggestion is predicated upon the proposition that the appellant in this case exercises her right of appeal to that court for a determination of the validity of Sec. 16.

If it desires, the legislature can authorize, by statute, the search of one's home for marijuana so long as it does so within the limits prescribed by the Constitution of this state and that of the United States. The fact that it has not done so is not the fault of any other department of government.

The courts of this state and this nation must preserve, protect, and defend our Constitutions and the rights, privileges, and freedoms guaranteed thereby.

When the courts fail in this duty and these guarantees are destroyed, constitutional government goes, too.

I respectfully dissent.